John DOE I, John Doe II, and John Doe III, on their own behalf and as representatives of the class of sex offenders in the State of Iowa, Plaintiffs

v.

Tom MILLER, Iowa Attorney General and J. Patrick White, Johnson County Attorney and Michael Wolf, Clinton County Attorney, as representatives of the class of all county attorneys in Iowa, Defendants.

No. 3:03–cv–90067.

United States District Court,
S.D. Iowa,
Davenport Division.

July 25, 2003.

Philip B. Mears, Mears Law Office, Iowa City, IA, Randall C. Wilson, Iowa Civil Liberties Union Foundation, Des Moines, IA, for Plaintiffs.

Gorson E. Allen, Douglas R. Marek, Attorney General of Iowa, Des Moines, IA, for Tom Miller.

J. Patrick White, Johnson County Attorneys Office, Iowa City, IA, Pro se.

Michael Wolf, Clinton County Attorney Office, Clinton, IA, Pro se.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Three named Plaintiffs bring this action on behalf of a proposed class of Plaintiffs to challenge the constitutionality of the recently enacted Iowa Code § 692A.2A, which prohibits sex offenders, whose offenses were committed against minors, from residing within two-thousand feet from a school or child care facility. Presently before the Court are Plaintiffs' Motions to certify this action as a class action comprised of both plaintiff and defendant classes. Plaintiffs ask the Court to certify a Plaintiff class to include all sex offenders in Iowa, and a Defendant class made up of Iowa's individual County Attorneys. Plaintiffs also move for a Temporary Restraining Order (TRO), pursuant to Federal Rule of Civil Procedure 65(b), to enjoin Defendants from enforcing § 692A.2A until the parties have an opportunity to present evidence on preliminary injunctive relief. For the reasons explained below, Plaintiffs' Motions are granted.

### I. IOWA CODE § 692A.2A

On May 9, 2002, Iowa Governor Thomas Vilsack signed Senate File 2197 into law. Effective July 1, 2002, Senate File 2197, now codified at Iowa Code § 692A.2A, states in full:

692A.2A Residency restrictions—child care facilities and schools.

1. For purposes of this section, *"person"* means a person who has committed a criminal offense against a minor, or an aggravated offense, sexually violent offense, or other relevant offense that involved a minor.

2. A person shall not reside within two thousand feet of the real property comprising a public or nonpublic elementary or secondary school or a child care facility.

3. A person who resides within two thousand feet of the real property comprising a public or nonpublic elementary or secondary school, or a child care facility, commits an aggravated misdemeanor.

4. A person residing within two thousand feet of the real property comprising a public or nonpublic elementary or secondary school or a child care facility does not commit a violation of this section if any of the following apply:

    a. The person is required to serve a sentence at a jail, prison, juvenile facility, or other correctional institution or facility.

    b. The person is subject to an order of commitment under chapter 229A.

    c. The person has established a residence prior to July 1, 2002, or a school or child care facility is newly located on or after July 1, 2002.

    d. The person is a minor or a ward under a guardianship.

The plain text of § 692A.2A states that the statute applies to any person who has committed a criminal offense against a minor. Plaintiffs indicate in their brief, however, that the law is generally being interpreted as applicable to individuals who have committed sex crimes against minors. Where applicable, the statute restricts the area in which an affected person may reside to places that are not within two-thousand feet from a school or child care facility. As the restriction is limited to residency, § 692A.2A does not otherwise prohibit an individual's presence within the restricted zone; affected persons are free to travel, work, or generally move about within any area. The statute contains no time frame regarding when a person committed his or her crime, but does include a limited "grandfather clause," whereby an individual who has established a residence prior to July 1, 2002 is exempted from the area restrictions. The duty to enforce § 692A.2A lies with the Iowa Attorney General and the individual County Attorneys for each of the State's ninety-nine counties. *See* Iowa Code §§ 13.2, 331.756(1).

## II. CLASS CERTIFICATION

Plaintiffs ask the Court to certify both a Plaintiff and a Defendant class in this action. A proposed class must meet the requirements of Federal Rules of Procedure 23(a) and (b) in order to be certified. Section (a) of Rule 23 provides the prerequisites for any class action:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Section (b) then lays out additional requirements that must be satisfied, depending on the type of class action:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b). The party seeking class certification has the burden of showing that these prerequisites and requirements are met. *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir.1994).

## A. Plaintiff Class

Plaintiffs move the Court to certify a Plaintiff class consisting of "all sex offenders currently living in the state of Iowa, or who might wish to live in the state of Iowa." Plaintiffs ask the Court to specifically exclude from the class, any individual who is currently being prosecuted for a violation of § 692A.2A. In their Motion, Plaintiffs contend that the proposed class satisfies the requirements of Rule 23(a) and (b), and is, therefore, appropriate. The Court agrees.

### 1. Numerosity

Plaintiffs note that there are currently over 5000 sex offenders in Iowa, and over 4500 of these individuals had minors as their victims. Joinder of all of these parties would be undeniably impracticable. Add to this an untold number of persons who would fall under the purview of § 692A.2A should they ever move to Iowa and the numerosity requirement is certainly satisfied.

### 2. Common Questions of Fact or Law

■ Defendants contend that a Plaintiff class is inappropriate because of the individual circumstances of each potential Plaintiff. Defendants ask instead that the Court deal with each potential Plaintiff as he or she comes forward. Defendants offer nothing else to support their objection to certification of a Plaintiff class and the Court is unpersuaded.

Plaintiffs' Complaint attacks § 692A.2A on its face as an unconstitutional punishment and as an infringement on an individual's right to family privacy and free travel; the Fifth Amendment right against self incrimination; and procedural Due Process guarantees of notice and an opportunity to be heard before being deprived of personal liberties. The Complaint and Affidavits from several John Does detail the effect of the statute on particular individuals, but Plaintiffs seek to challenge, as a class, the application of § 692A.2A to any individual included in the statute's definition of "person." The constitutional rights and civil liberties asserted are immutably held by all persons implicated under § 692A.2A. Accordingly, common questions of law abound irrespective of the facts of each class member's individual circumstances. As Plaintiffs bring this action as a facial challenge to § 692A.2A rather than as applied to each individually named Plaintiff, the Court finds that the commonality requirement is satisfied.

One exception here involves those persons who are currently being criminally prosecuted for violations of § 692A.2A. Under the *Younger* abstention doctrine, federal district courts should "abstain from hearing cases when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir.2002) (quoting *Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir.1996)). *See also Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Accordingly, the Court must abstain from interfering with state court proceedings that have already been commenced, as the state courts of Iowa are more than capable to access the constitutional validity of § 692A.2A as it is applied to these individuals. For this reason, the Court adopts the suggestion of Plaintiffs and excludes from this class action those individuals who are currently involved in state court proceedings regarding Iowa Code § 692A.2A.

### 3. Typicality and Adequate Representation

The third and fourth components of Rule 23(a) require that the claims or defenses of the class representatives be typical of those of the class, and that the class representatives will fairly and adequately protect the

interests of the class. There is no suggestion that the claims of the named John Doe Plaintiffs are atypical from the claims of other class members. As well, the Court has no reason to doubt the ability of the named Plaintiffs and their attorneys to fairly and adequately represent the interests of the class. The Court, therefore, finds that the four elements of Rule 23(a) are satisfied.

### 4. Type of Class Action—Rule 23(b)

■ As noted above, in addition to satisfying the four elements of class certification set forth in Rule 23(a), a proposed class must be maintainable as one of the three types of class actions defined in Rule 23(b). Here, Plaintiffs argue that the proposed class is properly maintained under 23(b)(1)(A), as prosecutions of separate actions by the class members would create a risk of inconsistent judgments with respect to the members of the class which would establish incompatible standards of conduct for the Defendants. The Court agrees. Were the Court to deny class certification, thereby compelling each member of the Plaintiff class to individually challenge § 692A.2A against each of the various County Attorneys, the risk of inconsistency is enormous.

### 5. Class Defined, Notice, and Exclusion from Class

Pursuant to Rule 23(c)(1), the Court finds that the proposed Plaintiff class satisfies all of the requirements of Rule 23, and hereby certifies a Plaintiff class in this action under Rule 23(b)(1)(A). The Plaintiff class shall be defined as "All individuals defined as a 'person' by Iowa Code § 692A.2A (1) currently living in the state of Iowa, or who might wish to live in the state of Iowa, excluding those individuals currently being prosecuted under Iowa Code § 692A.2A in the Iowa state courts." As the Plaintiff class is certified under Rule 23(b)(1)(A), the notice and exclusion provisions of Rule 23(c)(2) are inapplicable.

### B. Defendant Class

Plaintiffs also move the Court to certify a Defendant class in this action including all County Attorneys in the State of Iowa, in their official capacity. Plaintiffs have named J. Patrick White, Johnson County Attorney, and Michael Wolf, Clinton County Attorney, as class representatives. Defendants have not opposed the certification of a Defendant class, but both Mr. White and Mr. Wolf have expressed reluctance to being named as class representatives.

The analysis of the proposed Defendant class is largely identical to that for the Plaintiff class. Again looking at the requirements of Rule 23(a): 1) with ninety-nine counties in Iowa, joinder of each individual County Attorney is impracticable; 2) as with the Plaintiff class, there are questions of law common to all Defendants; and 3) the defenses of the representative Defendants appear to be typical of the defenses of the class of Defendant County Attorneys.

■ As for the fourth requirement of Rule 23, fair and adequate representation of the interests of the class, the representative Defendants' reluctance to serve as class representatives must be addressed. The Ninth Circuit Court of Appeals has stated that "[a]dequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1995) (quoting *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992))). The proposed Defendant class members and the named representatives in the present action are all Iowa County Attorneys who must each satisfy identical requirements under Iowa Code § 331.751(2) to hold office. Each individual class member is, therefore, equally qualified to act as a class representative. There is no suggestion that this lawsuit is collusive.

The question, then, is whether the named class representatives share the interests of the class without antagonism. All County Attorneys in Iowa are charged by law with a duty to "[d]iligently enforce or cause to be enforced in the county, state laws and county

ordinances, violations of which may be commenced or prosecuted in the name of the state, county, or as county attorney, except as otherwise provided." Iowa Code § 331.756(1). As a County Attorney has a duty to enforce, or cause to be enforced, the laws of the State, it follows that this duty must extend to defending the constitutionality of those same laws. Refusal, reluctance, or any other form of goldbrick representation would be to shirk the duty imposed on the official by the voters of his or her county. Both named County Attorneys have now appeared before the Court to defend § 692A.2A, and neither has flatly refused to serve as a class representative.[1] The Court, therefore, has no reason to believe that either party intends to forego his duty to diligently enforce or cause to be enforced the law of the State.[2] Accordingly, the Court finds that the Johnson and Clinton County Attorneys will fairly and adequately protect the interests of the Defendant class of County Attorneys.[3]

■ Having found that the Defendant class satisfies the requirements of Rule 23(a), the Court must again determine whether the action may be maintained as a class action under Rule 23(b). As with the Plaintiff class, the Court finds that Rule 23(b)(1)(A) applies in the present case as prosecution of separate actions would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendant County Attorneys. For these reasons, the Court hereby certifies a Defendant class under Rule 23(b)(1)(A), defined as "all County Attorneys for the State of Iowa, in their official capacities." As with the Plaintiff class, the notice and opt-out provisions of Rule 23(c)(2) do not apply to a class certified

under 23(b)(1). All members of the defined class will, therefore, be bound by the Court's orders.

Although the named Defendant class representatives are qualified and charged with the duty to defend the interests of the Defendant class of county attorneys, the Court is well aware of the tensions that may arise among class members based on the fact that the Defendant class representatives were named by Plaintiffs. The Court has within its power the ability to replace class representatives with other class members or to increase the number of class representatives. *See Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1157 (7th Cir.1999). The Court, therefore, invites the members of the Defendant class to discuss which member or members they would choose to serve as the class representative(s). Motions or affidavits regarding a change in class representation must be received by the Court by August 18, 2003 so the Court may consider the request and make any changes in time for the September 15, 2003 hearing on Plaintiffs' Motion for Preliminary Injunction. Because, however, Defendants White and Wolf are individually named as Defendants in this action, Plaintiffs alone have the option of dismissing them at this stage of the proceedings.

### III. TEMPORARY RESTRAINING ORDER

Plaintiffs next move the Court to issue a temporary restraining order (TRO) pursuant to Fed.R.Civ.P. 65(b), to enjoin Defendants from enforcing Iowa Code § 692A.2A until the Court has an opportunity to fully consider Plaintiffs' request for a preliminary injunction.[4]

---

1. In a recently filed response, Defendant White states that he has no objection to being ordered to serve as a class representative.

2. The Court takes judicial notice of the fact that both Mr. White and Mr. Wolf enjoy excellent reputations as fine lawyers and well-regarded public servants. The Court further notes that Defendant Tom Miller, the Iowa Attorney General, is vigorously defending § 692A.2A.

3. As the interests of the Attorney General and the Defendant class of County Attorney are largely similar, the Court assumes that the work in-

volved in defending § 692A.2A will, most likely, be shared between the State and County offices.

4. Although Plaintiffs' Motion is for a temporary restraining order, Defendants were given notice and were heard at the July 14, 2003 hearing. The Court also left the record open until July 25th to allow Defendants to submit any additional evidence or argument in opposition to Plaintiffs' request for the TRO. As such, the Motion is treated similarly to a motion for a preliminary injunction, and the ten day limitation on the duration of the TRO does not apply. *See* C. Wright, A. Miller & M. Kane, *Federal Practice &*

Under Rule 65(b), a TRO may issue without notice or hearing only if (1) it is clear that immediate and irreparable harm will result before the adverse party can be heard in opposition, and (2) if the applicant certifies in writing the efforts that have been made to give notice and the reasons why notice is not required. Here, notice is of no concern as Defendants had an opportunity to be heard at the July 14, 2003 hearing.

In this Circuit, analyzing a plaintiff's request under Federal Rule of Civil Procedure 65 requires application of the standards enunciated in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc). *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1178 (8th Cir.1998). The *Dataphase* test is applicable to a motion for a TRO as well as to a motion for a preliminary injunction. *See S.B. McLaughlin & Co. v. Tudor Oaks Condominium Project*, 877 F.2d 707, 708 (8th Cir.1989); *Sports Design and Development, Inc. v. Schoneboom*, 871 F.Supp. 1158 (N.D.Iowa 1995).

The *Dataphase* test involves the examination of four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc.*, 640 F.2d at 113. The Eighth Circuit has determined that no single *Dataphase* factor is dispositive; all factors must be considered and balanced to determine whether to grant a restraining order. *See International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Schimmel*, 128 F.3d 689, 691 (8th Cir.1997). The burden of establishing the propriety of a TRO is on the movant. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994) (citing *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (en banc)).

*Procedure: Civil 2d* § 2951 (1995). *See also Kansas Hosp. Ass'n v. Whiteman*, 835 F.Supp. 1548, 1551 (D.Kan.1993) (citing Wright & Miller); *Saint v. Nebraska School Activities Asso.*, 684 F.Supp. 626, 627, n. 1 (D.Neb.1988) (citing Wright & Miller).

## A. Threat of Irreparable Harm

Although none of the *Dataphase* factors are individually dispositive, the Eighth Circuit has noted that "the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny [temporary injunctive relief]." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1183 (8th Cir.1998) (internal citation omitted). Plaintiffs offer affidavits from nine members of the Plaintiff class as evidence of the threat of irreparable harm to members of the class if injunctive relief is not granted.[5]

1) John Doe I was convicted of second degree sexual assault in Wisconsin in 1994 for having consensual sex with a girl who was almost fifteen when he was eighteen. This behavior does not constitute a crime under Iowa law, but John Doe I was still required to register as a sex offender when he moved to Iowa for school. John Doe I currently resides in Iowa City. He currently resides in an apartment that is within the restricted zone under § 692A.2A, but he established this residence prior to July 1, 2002. On August 1, 2003, John Doe I wishes to move to a new apartment in the same apartment complex. Doing so would require him to register a new residence, thereby placing him in violation of the residency restriction. A map of Johnson County shows that there is virtually no place in Iowa City for a sex offender to live. As John Doe I is a student at the University of Iowa, he expresses concern about being able to continue his studies while being compelled to reside in a rural area outside Iowa City.

2) John Doe II pleaded guilty to third degree sexual abuse in August 2002 for having consensual sex with a fifteen year old girl when he was twenty years old. John Doe II currently resides in Iowa City at a location that is in viola-

**5.** Plaintiffs have asked that the identities of the class members be concealed. The Court agrees with Plaintiffs' desire to protect their privacy on these sensitive issues and will, therefore, refer to the affiants using Plaintiffs' requested John Doe pseudonyms.

tion of § 692A.2A. The Johnson County Sheriff's Department is aware of the fact that John Doe II is currently in violation of the statute, but has given him until August 1, 2003 to find a suitable residence. John Doe II maintains that he has attempted to find a legally acceptable residence since April 2003, when he was evicted from his apartment, but he has been unsuccessful in locating such a place.

3) John Doe IV currently resides at the Mount Pleasant Correctional Facility in Mount Pleasant, Iowa because of a third driving while intoxicated conviction. John Doe IV was paroled by the Iowa Board of Parole on June 10, 2003, but has not been allowed to leave prison because he cannot find an acceptable residence. John Doe IV wishes to live with his mother in Mason City, but is unable to do so because her residence is within a restricted area. John Doe IV's mother states in a separate affidavit that she was told of two apartment complexes in Mason City that might be suitable, but neither has vacancies. John Doe IV's mother states that her son is certainly welcome to live with her if not for § 692A.2A. John Doe IV is subject to the restrictions of the Statute because of a 1992 offense against a minor that was adjudicated in juvenile court because John Doe IV was fourteen years old at the time.

4) John Doe V has been serving a fifteen year sentence at the Mount Pleasant Correctional Facility after pleading guilty to second degree sexual abuse. He has completed the Sex Offender Treatment program and received a parole in March of 2003. As with John Doe IV, John Doe V remains incarcerated in spite of receiving a parole because he cannot find a suitable place to live. If he is released, John Doe V would like to live with his wife in the Des Moines area. He states that it would be an extreme hardship for his wife to have to live outside of Des Moines. A map of the City of Des Moines shows that the 2000 feet residency restriction bars individuals covered by § 692A.2A from living virtually anywhere except for a few blocks in some of the city's most exclusive neighborhoods. As such, John Doe V's wife has been unable to find an acceptable residence, and John Doe V remains incarcerated four months after receiving a parole.

5) John Doe VI states that he purchased a house for himself and his elderly and infirmed mother after the address was cleared by the Des Moines Police Department. About six weeks after they moved into the house on April 1, 2003, John Doe VI's mother received a call from the Des Moines Police Department Sex Offender Division stating that John Doe VI would have to move out as the house was actually within two thousand feet of a school. John Doe VI found and moved to an acceptable apartment in a Des Moines suburb, but is unable to maintain payments on both the apartment and the house. Since being forced to move to the apartment, John Doe VI has suffered a heart attack and now has medical bills to contend with in addition to two housing payments. During the first part of July, John Doe VI was told to move out of the apartment as the owner does not want to rent to a sex offender. He has been since been unable to find any place to live that is not in violation of § 692A.2A. John Doe VI received a twenty-five year sentence for sexual abuse in the second degree in 1993 and remains on supervised parole until 2005.

6) John Doe VII lives with his wife and child in rural Linn County, Iowa and works in Cedar Rapids. He must register as a sex offender in Iowa because he was convicted of the crime of indecent liberties with a child under Kansas law.[6] John Doe VII's wife is expecting another child and the family wishes to move

**6.** The statutory crime of indecent liberties with a child, Kan. Stat. Ann. § 21–3503 replaced what was commonly known as statutory rape. *State ex rel. Hermesmann v. Seyer*, 252 Kan. 646, 847 P.2d 1273, 1276 (1993).

to make room for the new baby and because of a significant pest problem in their present residence that the landlord has been unwilling to correct. John Doe VII has investigated upwards of twenty-five locations in Cedar Rapids, Iowa, but none are beyond two-thousand feet from a school or daycare center. The Linn County Sheriff's Department will not provide John Doe VII with a list of places to live in Cedar Rapids, but claim that they know "that there are a few places on one side of town." The Sheriff's Department will not tell John Doe VII where these places are, and he has been unable to find a legally acceptable residence.

7) John Doe VIII was convicted of the aggravated misdemeanor of sexual exploitation of a minor under Iowa Code § 728.12(3) for possessing improper pictures from the internet. Because his crime involved an offense against a minor, John Doe VIII is subject to the residency restriction of § 692A.2A. John Doe VIII was recently evicted from his apartment and presently lives with his parents in Iowa City. As his parents' home is within two-thousand feet of a school or child care facility, he is currently living in violation of § 692A.2A. John Doe VIII works in Coralville and attends school at Kirkwood Community College. He states that he would be unable to do either if compelled to live in the country as he has no driver's license.

8) As with John Doe VIII, John Doe IX was convicted under Iowa Code § 728.12(3) for downloading inappropriate material from the internet that involved minors. John Doe IX registered with the Johnson County Sheriff's Department and was given a list of four apartments that would be legally acceptable. After checking, John Doe IX learned that none of the listings had any current openings. He is currently living in violation of § 692A.2A and cannot find a place that is legally acceptable.

9) John Doe X and his wife both receive Social Security Disability payments because of mental retardation and mental illness. John Doe X has no regular employment, but he occasionally finds work through government sponsored work groups. In June of 2002, John Doe X, was convicted, as a pro se defendant, of a serious misdemeanor for violating Iowa Code § 709.14, lascivious conduct with a minor. John Doe X has been discharged from probation and is not included on the published list of sex offenders because he is classified as a low risk to re-offend. Regardless, John Doe X must abide by the terms of § 692A.2A as his offense was committed against a minor. John Doe X had lived in a trailer home with his wife in Carroll, Iowa, but must now find a new residence as his wife recently sold the trailer. As John Werden, the Carroll County Attorney, confirmed at the July 14 hearing, John Doe X cannot live anywhere in the City of Carroll because of the 2000 feet restriction. John Doe X avows that if the County Attorney is allowed to enforce § 692A.2A, he will in all likelihood be homeless as he can find no place to legally reside.

Defendants argue that Plaintiffs have not shown a threat of irreparable harm, and offer statements from Coralville and Iowa City police officers identifying potentially legal housing in these two communities. Defendants also challenge the allegations of John Does II and VIII that they were recently evicted as Defendants were unable to discover any formal records of evictions. Lastly, Defendants note the actions taken by the Coralville Police Department to work with certain individuals affected by § 692A.2A. The fact that limited housing may be available, that John Does II and VIII may not have been formally evicted from their apartments, or that government officials may assist some class members in finding suitable housing before commencing prosecution has little effect on Plaintiffs' statements.

The collective result of the Court's review of the Plaintiffs' proffered affidavits reveals that two class members, John Does

IV and V, will remain in prison regardless of receiving a parole unless the Defendant class is enjoined from enforcing § 692A.2A. At least four class members, John Does I, II, VIII, and IX, face an immediate or imminent threat of criminal prosecution as they are currently, or will soon be, living in violation of § 692A.2A. John Doe VI has nowhere to live so long as § 692A.2A is in force as he has been evicted from the apartment he rented after the Des Moines Police Department told him that he could not live in the house they had approved a short time before. Unless Defendants are enjoined from enforcing § 692A.2A, John Doe VII and his family must continue to live in a residence that is not only too small to accommodate their growing needs, but that is plagued by a pest problem the landlord will not remedy. Finally, John Doe X, a mentally retarded man, may end up homeless as the Carroll County attorney has made clear both his intent to enforce § 692A.2A and the fact that there are no legally acceptable residences in the City of Carroll. Although the nine John Doe class members represented in Plaintiffs' affidavits make up but a small percentage of the class as a whole, the threat of irreparable harm to these individuals is enormous. As the Court has already found, the claims of the class representatives and the identified John Doe class members are typical of the class as a whole.

In bringing this action, Plaintiffs argue that Iowa Code § 692A.2A violates a number of their constitutional rights. Absent injunctive relief, a number of the identified members of the Plaintiff class and countless unidentified class members will face criminal prosecutions for exercising what they believe is their constitutional right to live in privacy with their families where they so choose. "An individual who is imminently threatened with prosecution for conduct that he believes is constitutionally protected should not be forced to act at his peril." *Edgar v. MITE Corp.*, 457 U.S. 624, 651, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) (Stevens, J., concurring). With the words of Justice Stevens in mind, the Court finds that Plaintiffs have successfully demonstrated a threat of irreparable harm.

**B. Balance of Harm Against Injury to Other Litigants and Public Interest**

The second *Dataphase* factor instructs the Court to balance the harm to Plaintiffs against the injury that granting the injunction will inflict on other parties to the litigation. The threatened harm to Plaintiffs includes criminal prosecution, continued incarceration, untenable living situations, economic loss, and forced vagrancy. Defendants' interest is their duty to enforce the laws of the State of Iowa. As noted above, this interest is a function of their office as elected officials; it is not personal. The Court agrees with Plaintiffs that Defendants' interest is further attenuated by the fact that Plaintiffs' Complaint raises a number of substantial challenges to § 692A.2A under the United States Constitution, which Defendants are also sworn to uphold. As such, the Defendants themselves should prefer resolution of the constitutional issues involved here before they embark on continued prosecutions of § 692A.2A. Accordingly, the Court finds that the harm to Plaintiffs greatly outweighs any potential harm to the interests of Defendants.

The same can be said for the fourth *Dataphase* factor, the public's interest in granting injunctive relief. Plaintiffs contend that although the public has an undeniable interest in ensuring public safety and in having the laws of the State enforced, the public has an even greater interest in assuring that constitutional violations are remedied. Plaintiffs are correct; "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge v. Michigan Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir.1994) (citing *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir.1987)). The Court, therefore, finds that the public interest is served by enjoining Defendants from enforcing Iowa Code § 692A.2A.

**C. Likelihood of Success**

The final factor requires the Court to consider the likelihood that Plaintiffs will

succeed on the merits of their claims. As these proceedings are in their infancy, the Court can do little more than speculate about the eventual outcome of this case. The Eighth Circuit notes that such speculation "militates against any wooden or mathematical application of the test," and instead advises that "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp.*, 140 F.3d at 1179 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, (8th Cir.1987) (quoting *Dataphase*, 640 F.2d at 113)).

Here, Plaintiffs have raised a number of substantial constitutional challenges to Iowa Code § 692A.2A. Defendants have not had an opportunity to respond to these legal arguments, and the Court is not prepared to address the merits of the same at the present time. As well, Iowa Code § 692A.2A appears unique among state laws, and no federal court has had an opportunity to consider a similar statutory scheme. The Court, therefore, turns to the one court that has reviewed § 692A.2A. In an extremely well reasoned opinion from the Iowa District Court for Washington County, Judge Lucy Gamon found § 692A.2A unconstitutional as applied to a criminal defendant based on a number of the same issues raised in the present case. *See* Plaintiffs' Exhibit A, *State of Iowa v. Keith Frederick Seering*, Criminal No. AGIN006718.[7] Having not yet fully considered Plaintiffs' claims or Defendants' anticipated opposition, the Court currently has no reason to doubt the sagacity of Judge Gamon's decision. The Court, therefore, finds that Plaintiffs are likely to succeed on the merits of their claims.

As Plaintiffs have shown the propriety of granting a TRO by succeeding on all four *Dataphase* factors, Plaintiffs' Motion for a Temporary Restraining Order is granted. The individual Defendants and members of the Defendant class shall be enjoined from

enforcing Iowa Code § 692A.2A for the duration of the Order. This Order shall remain in effect until the Court rules on Plaintiffs' Motion for Preliminary Injunction. Oral argument on the Motion is scheduled for September 15th and 16th, 2003.

### D. Security

Before the Court may issue a temporary restraining order to enjoin Defendants from enforcing § 692A.2A, Fed.R.Civ.P. 65(c) requires the party seeking injunctive relief to post a security bond "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." In requiring a security bond, Rule 65(c) furnishes financial security to the opposing party in the event the injunction is later deemed improper. *United States v. Onan*, 190 F.2d 1, 7 (8th Cir.1951). The amount of the bond required lies within the sound discretion of the Court. *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir.1989).

Defendants have no financial or personal interest in the outcome of this case. As noted above, there is no risk of harm to Defendants because of the Court's issuance of this temporary restraining order. The Court, therefore, finds that no amount shall be required as security from Plaintiffs before issuing the TRO. *See Kaepa Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.1996) ("court 'may elect to require no security at all.'") (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir.1978)); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2nd Cir.1974) ("[T]he district court may dispense with security where there has been no proof of likelihood of harm to the party enjoined.") (citations omitted); *Urbain v. Knapp Bros. Mfg.*, 217 F.2d 810, 816 (6th Cir.1954) (no bond required where no material damage would ensue); *Onan*, 190 F.2d at 7 (district court did not error by not requiring bond where plaintiff could not have been damaged).

---

7. Although the State's case against Mr. Seering was dismissed, the Iowa Attorney General indicated the State's intent to appeal Judge Gamon's ruling. Accordingly, Mr. Seering is excluded from the Plaintiff class in this action.

## IV. ORDER

Plaintiffs' Motions to certify Plaintiff and Defendant classes in this action are **granted.** Plaintiffs' Motion for Temporary Restraining Order is also **granted.** No security bond shall be required from Plaintiffs before the injunction takes effect. The individually named Defendants and the members of the certified Defendant class of County Attorneys are hereby immediately enjoined from enforcing Iowa Code § 692A.2A until the Court rules on Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.